UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CLUB EXPLORIA, LLC and CLUB
EXPLORIA MANAGEMENT, LLC,

    Plaintiffs,

v.                                          Case No: 6:18-cv-576-Orl-28DCI

AARONSON, AUSTIN, P.A. and
AUSTIN N. AARONSON,

    Defendants.

## ORDER

Timeshare entities Club Exploria, LLC (Club Exploria) and Club Exploria Management, LLC (CEM) bring this action against law firm Aaronson, Austin, P.A. (Aaronson P.A.) and attorney Austin N. Aaronson (Aaronson), seeking damages in two federal claims and four claims under Florida law. Plaintiffs also bring a prayer for declaratory relief. Defendants move to dismiss all claims. (Mot., Doc. 18). The Court has considered Defendants' motion and Plaintiffs' Memorandum in Opposition (Doc. 23). As set forth below, the Court grants the motion in part and denies it in part.

I.    Background[1]

Club Exploria is a timeshare resort developer and owner, and CEM is an entity to which timeshare-interest owners obligate themselves to pay dues and maintenance fees when they acquire their timeshare interests from Club Exploria. (Compl., Doc. 1, ¶¶ 5–7, 16–17). Aaronson P.A. is allegedly an "exit company" that "profit[s] by convincing

---

[1] The facts in the Background section of this Order are taken from the Complaint (Doc. 1) and are accepted as true at the motion-to-dismiss stage.

consumers that they have a purportedly 'lawful' way to 'escape their [timeshare ownership] obligations, without regard to whether there is any factual or other basis" for avoiding those obligations. (Id. ¶ 8). Defendants allegedly provide "timeshare-relief 'services'" to owners of Club Exploria timeshare interests, (id. ¶ 25), and "encourage timeshare owners to pursue rescission without investigating the facts of their clients' situations," (id. ¶ 9).

According to the Complaint, "[m]ost consumers finance their timeshare interest purchases over time, thereby incurring ongoing obligations to the timeshare developer and others such as CEM." (Id. ¶ 7). And "[a]fter months and, in some instances, years of performing their contractual obligations, Affected Owners 1, 2, 3, 4, 5, and 6 . . . hired Defendants to send Club Exploria and/or [its predecessor] Summer Bay Partnership letters that adduce purported grounds for rescinding the Affected Owners' timeshare purchase[s]." (Id.).

Defendants allegedly "us[e] aggressive and dramatic marketing tactics" on their website that "suggest that all timeshare owners have an automatic or inherent right to cancel their contractual obligations to pay—if only the consumer knows the right levers to pull." (Id. ¶ 10 (emphasis removed); see also id. ¶ 53). As a result of Defendants' marketing and advertising, "Affected Owners 1, 3, and 5 have stopped making loan payments to Club Exploria," and Affected Owners 2 and 5 "have stopped making Maintenance Fee payments to CEM." (Id. ¶ 12). Additionally, "Affected Owners 4 and 6 hired Defendants to send correspondence to Club Exploria [or its predecessor] alluding to fraud as grounds for rescinding their timeshare purchases." (Id.).

In their six-count Complaint, Plaintiffs allege that Defendants: (1) under Florida law, tortiously interfered with Plaintiffs' contractual relationships with Affected Owners 1 through

2

6 (Count I); (2) violated the federal civil RICO statute, 18 U.S.C. § 1962(b)–(c), by engaging in a pattern of mail and wire fraud (Count II); (3) violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)[2] (Count III); (4) violated the false advertising provisions of the federal Lanham Act, 15 U.S.C. § 1125(a) (Count IV); (5) engaged in misleading advertising practices in violation of section 817.41, Florida Statutes (Count V); and (6) committed trade libel in violation of Florida law (Count VI). Plaintiffs also seek declaratory relief. (See Compl. ¶¶ 102–10). Defendants now move to dismiss all claims.

## II. Legal Standards

Generally, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

One caveat to Rule 8's "short and plain statement" standard is Rule 9(b)'s requirement that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). And in considering a motion to dismiss brought under Rule 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir.

---

[2] §§ 501.201–.213, Fla. Stat.

2004).

## III. Discussion

In their motion to dismiss, Defendants assert four grounds for dismissal of Plaintiffs' claims: (1) lack of standing; (2) the Noerr-Pennington doctrine; (3) Florida's litigation privilege; and (4) failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). These grounds are addressed in turn.

### A. Standing

Defendants, characterizing this case as a "suit by non-clients against opposing legal counsel," first argue that "Plaintiffs lack standing to bring any claims associated with this representation" because they are not in privity with Defendants. (Doc. 18 at 3–4). Defendants maintain that "Plaintiffs do not have any legal basis to challenge [Defendants'] representation of timeshare owners, or the legal positions and arguments raised by [Defendants] on their behalf." (Id. at 4).

Defendants do not couch their standing argument in terms of Article III standing, which would affect the jurisdiction of this Court to hear this case. To the extent Defendants are asserting a deficiency in Article III standing, that argument is rejected. Plaintiffs have alleged that they suffered an injury fairly traceable to Defendants' conduct that is redressable by a favorable ruling from this Court. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (describing these requirements for Article III standing). Plaintiffs thus have sufficiently pleaded a basis for Article III standing.

And to the extent that Defendants challenge standing based on "lack of privity," Plaintiffs correctly note that Defendants "mischaracterize[] the nature of Plaintiffs' case," (Doc. 23 at 2–3), which focuses on Defendants' advertising tactics rather than their representation of Plaintiffs. See, e.g., Orange Lake Country Club, Inc. v. Reed Hein &

4

Assocs., LLC, Case No. 6:17-cv-1542-Orl-31DCI, 2018 WL 5279135, at *6 (M.D. Fla. Oct. 24, 2018). In sum, Defendants' standing argument is rejected.

B. Noerr-Pennington

Next, Defendants assert that Plaintiffs' Complaint is "barred under the Noerr-Pennington doctrine." (Doc. 18 at 5). This doctrine "derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances,'" Silverhorse Racing, LLC v. Ford Motor Co., 232 F. Supp. 3d 1206, 1211 (M.D. Fla. 2017) (alteration in original), and Defendants contend that the Affected Owners' "decisions to retain [Defendants], and the correspondence sent to Plaintiffs on their behalf, constitute 'pre-litigative' conduct, which is immunized under the First Amendment right to petition," (Doc. 18 at 5).

The Noerr-Pennington doctrine originated from the Supreme Court's decisions in two antitrust cases—Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of America v. Pennington, 381 U.S. 657 (1965). "The essence of the doctrine is that parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent." Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc., 858 F.2d 1075, 1082 (5th Cir. 1988)). The doctrine has been extended "to protect First Amendment 'petitioning of the government from claims brought under federal and state laws including . . . common law tortious interference with contractual relations.'" Silverhorse, 232 F. Supp. 3d at 1211 (alteration in original) (quoting Video Int'l, 858 F.2d at 1084).

The doctrine extends "not only to petitioning of the judicial branch, but also to acts reasonably attendant to litigation, such as demand letters." Orange Lake, 2018 WL

5

5279135, at *6. But for immunity under the doctrine to attach, "the conduct at issue cannot fall within the [doctrine's] 'sham exception' . . . . In other words, the litigation activity must be genuine." Id. (quoting Silverhorse Racing, 232 F. Supp. 3d at 1211.

Here, like the plaintiffs in Orange Lake, Plaintiffs "have pleaded sufficient facts to suggest that [Defendants'] 'pre-litigative conduct' falls within the sham exception of the" doctrine. Id. The Complaint alleges that Defendants act in bad faith and pursue frivolous avenues of relief for the Affected Owners. (See, e.g., Compl. ¶¶ 34 & 67). "Thus, the Court cannot conclude, as a matter of law, that the [Noerr-Pennington] doctrine applies." Orange Lake, 2018 WL 5279135, at *6.

### C. Litigation Privilege

Defendants also assert that Plaintiffs' state law claims are barred by Florida's litigation immunity privilege, which "affords absolute immunity for acts or statements during the course of judicial proceedings if they have some relation to the proceeding." Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC, No. 6:17-cv-1542-Orl-31DCI, 2019 WL 645214, at *9 (M.D. Fla. Jan. 4, 2019). Defendants contend that this privilege applies here because "[p]re-litigation correspondence sent to an adverse party is a cornerstone of the legal system" and "[t]o suggest that an attorney or law firm could be sued for generating such a notice is abhorrent to the entire legal system." (Doc. 18 at 9).

This argument misses the mark. As noted in Orange Lake, the privilege "arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceeding or as necessarily preliminary thereto." 2019 WL 645214, at *9 (quoting Ange v. State, 123 So. 916, 917 (Fla. 1929)). "Statements 'necessarily preliminary' to judicial proceedings include pre-suit communications required by statute or by contract as a condition precedent to suit." Id. Here, as in Orange Lake, there is no

6

indication that the letters sent by Defendants "were required by statute or by contract as a condition precedent to suit," nor does it appear that Defendants ever filed suit against Plaintiffs. See id. Moreover, Plaintiffs' claims derive not only from the letters that Defendants sent but also from Defendants' advertising. The Court thus cannot conclude that Florida's litigation privilege bars the state law claims that Plaintiffs assert here.

### D. Rule 12(b)(6)

Plaintiffs bring two federal claims and four claims under Florida law. Plaintiffs invoke this Court's jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) for the federal claims and 28 U.S.C. § 1367 (supplemental jurisdiction) for the state law claims. Plaintiffs have not asserted that diversity jurisdiction exists. Thus, the Court will begin by addressing the federal claims.

#### 1. Federal Claims

##### a. RICO (Count II)

In Count II, Plaintiffs bring a claim under the federal civil RICO statute, alleging that Defendants violated 18 U.S.C. § 1962(b) and (c). (Compl. ¶¶ 70–80). The first of these subsections provides that "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). The second provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Id. § 1962(c).

7

A "pattern of racketeering activity" under RICO "requires at least two acts of racketeering activity." Id. § 1961(5). And "racketeering activity" is defined as including a long list of activities, among them "any act which is indictable under . . . [18 U.S.C. §] 1341 (relating to mail fraud) [and 18 U.S.C. §] 1343 (relating to wire fraud)." 18 U.S.C. § 1961(1)(B). Plaintiffs allege mail and wire fraud as the RICO predicate acts that Defendants committed. (See Compl. ¶¶ 73–74). In that vein, Defendants allegedly "participat[ed] in a scheme to defraud Plaintiffs of money they were owed by the Affected Owners and us[ed] the mail and wires in furtherance of that scheme." (Id. ¶ 73).

In their motion to dismiss, Defendants challenge Plaintiffs' pleading of the requisite RICO "enterprise," but the Complaint is sufficient in this regard. The Complaint alleges that Aaronson P.A. is the RICO legal-entity enterprise through which Aaronson carries out racketeering activities.

Defendants also contend that Plaintiffs have not sufficiently alleged a scheme to defraud in their RICO count, but Plaintiffs have alleged that the Affected Owners were tricked into paying Defendants money. The allegations in this regard are sufficient. Reliance by Plaintiffs on Defendants' representations is not required under RICO. See Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 647–50 (2008). And the Court rejects Defendants' argument that the Complaint does not plead this fraud with the particularity required by Federal Rule of Civil Procedure 9(b). The Complaint describes Defendants' conduct in detail and explains why it was misleading and deceptive and why statements on the website were false.

Additionally, Defendants challenge Plaintiffs' pleading of proximate cause on the RICO count. Although Plaintiffs will be put to their proof of causation at a later stage of the

8

case, they have sufficiently alleged that Defendants' false and misleading statements caused them to lose a stream of payments owed to them by the Affected Owners.

But Plaintiffs' predicate act allegations fall short. Defendants correctly note that the sending of prelitigation letters—even if those letters contain falsehoods—does not amount to "mail fraud." See, e.g., Diamond Resorts Int'l, Inc. v. Aarronson, Case No. 6:17-cv-1394-Orl-37DCI, 2018 WL 735627, at *6 (M.D. Fla. Jan. 26, 2018) ("[T]he 'mailing of litigation documents, even perjurious ones, [does] not violate' the mail and wire fraud statutes." (second alteration in original) (quoting United States v. Pendergraft, 297 F.3d 1198, 1209 (11th Cir. 2002))). And absent the mailing of these letters as "predicate acts," Plaintiffs are left with only one predicate act—the website advertising. See id. RICO requires at least two predicate acts to satisfy its "pattern of racketeering" requirement, and Plaintiffs' RICO count is deficient on this basis. Count II will therefore be dismissed without prejudice.

### b. Lanham Act (Count IV)

In Count IV, Plaintiffs bring a claim for false or misleading advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (Compl. ¶¶ 85–88). Plaintiffs allege in this count that Defendants make "misleading and deceptive statements" on their website that "influence potential clients to hire them to provide timeshare-relief services." (Compl. ¶ 86). These statements allegedly "have the capacity to deceive consumers such as the Affected Owners"; "did, in fact, mislead the Affected Owners"; and "had a material effect on [the Affected Owners'] decision to hire Defendants to help them avoid their contractual obligations to Plaintiffs." (Id.). Plaintiffs allege that as a result of Defendants' advertising, Club Exploria "lost the stream of payments that [it is] owed under" notes signed by Affected Owners 1, 3, and 5, and CEM lost maintenance fees owed by Affected Owners 2, 3, and 5. (Id. ¶ 87). Defendants move to dismiss this count on several bases.

9

First, Defendants argue that Plaintiffs do not satisfy the "zone of interests" and "proximate cause" requirements described by the Supreme Court in <u>Lexmark International, Inc. v. Static Control Components, Inc.</u>, 134 S. Ct 1377 (2014), relying largely on the fact that Plaintiffs are not competitors of Defendants. But courts presented with this argument in similar cases have rejected it, noting that in <u>Lexmark</u> the Supreme Court held that a plaintiff need not be in commercial competition with a defendant to be able to bring a Lanham Act false advertising claim against that defendant. See, e.g., <u>Diamond</u>, 2018 WL 735627, at *3; <u>Orange Lake Country Club, Inc. v. Reed Hein & Assocs.</u>, LLC, 2018 WL 5279135, at *9; <u>Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC</u>, Case No. 6:18-cv-1088-Orl-31DCI, 2018 WL 5279156, at *9 (M.D. Fla. Oct. 24, 2018). This Court agrees with the discussion of the issue in those cases and concludes that here, as there, Plaintiffs have sufficiently alleged the "zone of interests" and "proximate cause" <u>Lexmark</u> requisites.

Second, Defendants contend that Plaintiffs have not identified an actionable statement of fact or described how any such statement affected timeshare owners' financial decisions. Defendants assert that their advertising statements are mere "puffery" or "opinion" and therefore not actionable. This argument has been repeatedly rejected in similar cases involving similar allegations, and it gains no traction in the case at bar either. See <u>Diamond</u>, 2018 WL 735627, at *3; <u>Orange Lake</u>, 2018 WL 5279135, at *9 ("Based on the allegations of the [complaint], Defendants' statements were not general opinions or exaggerated statements; but rather, assertions of fact upon which a reasonable consumer might rely. Therefore, the Court cannot conclude as a matter of law that the statements at issue constitute mere puffery or non-actionable opinions."); accord <u>Westgate Resorts Ltd., v. U.S. Consumer Attorneys, P.A.</u>, Case No. 6:18-cv-359-Orl-31TBS, 2018 WL 4898947,

at * 4 (M.D. Fla. Oct. 9, 2018); Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC, 2018 WL 5279156, at *9.

Finally, Defendants aver that Plaintiffs have not articulated why the advertising statements are false.[3] But Plaintiffs sufficiently describe the statements made by Defendants on their website and explain why they are misleading and deceptive. At this stage of the case, these allegations are sufficient. See, e.g., Westgate Resorts Ltd. v. U.S. Consumer Attorneys, P.A., 2018 WL 4898947, at *4 ("Plaintiffs adequately convey the substance of the website and plead sufficient facts from which the Court can reasonably infer that Defendants' statements were false or misleading when considered in full context."). Count IV will not be dismissed.

2. *Florida Claims*

a. **Tortious Interference With Existing Contractual Relationships (Count I)**

Count I of Plaintiffs' Complaint asserts a claim under Florida law for tortious interference with existing contractual relationships. (Compl. ¶¶ 63–69). The elements of this cause of action are: "(1) the existence of a . . . contract; (2) knowledge of the . . . contract on the part of the defendant; (3) an intentional and unjustified . . . procurement of the contract's breach; and (4) damage to the plaintiff as a result of the interference." Howard v. Murray, 184 So. 3d 1155, 1166 (Fla. 1st DCA 2015). Additionally, the defendant must be a third party to the contract; an agent of a party to the contract, "acting within his capacity and scope as an agent, cannot be considered to be a separate entity outside of

---

[3] This argument is similar to Defendants' "puffery" and "opinion" argument rejected earlier.

the contractual relationship [that] can tortiously interfere with that relationship." Cedar Hills Props. Corp. v. Eastern Fed. Corp., 575 So. 2d 673, 676 (Fla. 1st DCA 1991).

Plaintiffs allege that Defendants knew of the Affected Owners' contractual obligations to Plaintiffs but nevertheless intentionally procured breaches of those obligations. (Compl. ¶ 66). They further allege that Defendants were not justified in procuring the breaches and that Plaintiffs have been damaged by lost streams of payments and fees. (Id. ¶¶ 67–68).

Defendants challenge the sufficiency of Plaintiffs' pleading of this count on the basis that Defendants were attorneys for, and agents of, the Affected Owners and therefore were not third parties or strangers to the business relationship. To be sure, acts of attorneys on behalf of their clients are generally imputed to the client, see, e.g., Richard Bertram, Inc. v. Sterling Bank & Trust, 820 So. 2d 963, 965 (Fla. 4th DCA 2002), and therefore attorneys are generally not third parties to their client's contractual relationships. But here, Plaintiffs allege that Defendants interfered with the contractual relationship between Plaintiffs and the Affected Owners through Defendants' advertising campaign, which predated the attorney-client relationship between Defendants and the Affected Owners. Thus, Plaintiffs have sufficiently alleged tortious interference by a third party to the contractual relationship. See, e.g., Diamond, 2018 WL 735627, at *7 ("The allegations of tortious interference are plainly directed at the Advertising, not Defendants' representation of Plaintiffs' timeshare members. Accordingly, at the pleading stage, the Court finds that Defendants are third parties to the Timeshare Contracts . . . ." (record citation omitted)). Moreover, even if the interference occurred while the attorney-client relationship existed, "an agent's 'privilege to interfere' with the contracts of its principal . . . is not available when [the] agent acts solely

with ulterior purposes and the advice [given by the agent to the principal] is not in the principal's best interest." Orange Lake Country Club, Inc. v. Castle Law Group, P.C., Case No. 6:17-cv-1044-Orl-31DCI, 2017 WL 6406866, at *2 (M.D. Fla. Dec. 15, 2017). Plaintiffs have alleged ulterior motives here. (See, e.g., Compl. ¶ 67). Count I survives the motion to dismiss.

### b. FDUTPA (Count III)

In Count III, Plaintiffs assert a claim under FDUTPA. (Compl. ¶¶ 81–84). FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." § 501.204(1), Fla. Stat. A FDUTPA claim has three elements: "1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." KC Leisure, Inc. v. Haber, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008).

In challenging the sufficiency of the pleading of this claim, Defendants vaguely assert that it does not satisfy the requirements of Federal Rule of Civil Procedure 9(b) for the pleading of fraud. (Doc. 18 at 17). "District courts within the Eleventh Circuit are divided as to whether th[e] heightened pleading standard [of Rule 9(b)] applies to FDUTPA claims." Diamond, 2018 WL 735627, at 9. In any event, here, as in Diamond, "[t]he Court is not persuaded that Plaintiffs' FDUTPA claim rests on fraud allegations," and "even if Rule 9(b) applies, the Complaint sufficiently identifies and specifies the Advertising that Plaintiffs contend is false and deceptive." Id. Plaintiffs identify the allegedly false statements on Defendants' website and allege how they have been damaged as a result of those statements. (Compl. ¶¶ 82–83). Count III will not be dismissed.[4]

---

[4] Defendants also assert that allowing the FDUTPA claim "to go forward would place a 'chilling effect' on the legal profession" and that the success of the FDUTPA claim is tied

### c. Misleading Advertising Under Section 817.41, Florida Statutes (Count V)

In Count V, Plaintiffs bring a claim for violation of section 817.41, Florida Statutes, for misleading advertising. (Compl. ¶¶ 89–95). Defendants seek dismissal of this count on the basis that Plaintiffs are not consumers, nor are they competitors of Defendants. Defendants are correct that dismissal of this count is warranted.

Section 817.41(1) provides that "[i]t shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement." Under this statute, "[a] consumer party may state a claim for statutory misleading advertising by pleading that the party relied on some identifiable alleged misleading advertising" and also pleading "all of the other elements of the common law tort of fraud in the inducement." Third Party Verification, Inc. v. Signaturelink, Inc., 492 F. Supp. 2d 1314, 1322 (M.D. Fla. 2007). Plaintiffs are not, and do not claim to be, consumers, and thus they cannot state a claim for a § 817.41 violation in this manner.

"[W]hen the party alleging misleading advertising is a competitor of the defendant in selling the goods or services to which the misleading advertisement relates, an allegation of competition is permitted to 'stand-in' for the element of direct reliance that a consumer is obligated to plead." Id. Here, Plaintiffs attempt to avail themselves of this "competitor" exception to the reliance requirement. The Complaint alleges that "Plaintiffs and Defendants are competitors in the sense that Defendants' business depends on

---

to the success of the Lanham Act claim. (Doc. 18 at 17). The Court rejects these assertions. And with regard to the latter, as noted earlier in this Order Plaintiffs' Lanham Act claim survives the motion to dismiss in any event.

Defendants convincing Plaintiffs' timeshare owners to divert the money they owe Plaintiffs to pay Defendants for supposed timeshare-relief services." (Compl. ¶ 90).

But Plaintiffs' conclusory allegations that they are competitors of Defendants are not sufficient to overcome Defendants' motion to dismiss. Similar allegations in similar cases have been rejected. See Orange Lake Country Club, Inc. v. Castle Law Group, P.C., Case No. 6:17-cv-1044-Orl-31DCI, 2018 WL 1535719, at *8 (M.D. Fla. Mar. 29, 2018); Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC, 2018 WL 5279135, at *7–8; Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC, 2018 WL 5279156, at *8. This Court agrees with the analysis and conclusion in those cases: "This argument fails. The Plaintiffs are in the business of getting people into timeshares, while the Defendants are in the business of getting them out. Though their target audiences necessarily overlap, the Plaintiffs and Defendants are selling entirely different services. . . . As the Plaintiffs are neither consumers nor competitors with respect to the Defendants, [the § 817.41 counts] will be dismissed with prejudice." 2018 WL 1535719, at *8; accord 2018 WL 5279135, at *8; 2018 WL 5279156, at *8.

As Defendants aptly note in their motion, "Plaintiffs and Defendants are simply not involved in any type of competitive relationship." (Doc. 18 at 23). Count V will be dismissed with prejudice.

### d.   Trade Libel (Count VI)

In their sixth count, Plaintiffs bring a claim under Florida law for trade libel—one in "[a] group of torts recognized under the collective title of 'injurious falsehood.'" Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 386 (Fla. 4th DCA 1999). The elements of such a claim are: (1) a falsehood (2) that "has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably

should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff[] and (5) special damages . . . proximately caused as a result of the published falsehood." Bothmann v. Harrington, 458 So. 2d 1163, 1168 (Fla. 3d DCA 1984).

Defendants assert that this claim fails because Plaintiffs "fail to identify any actionable falsehood that played a material and substantial part in inducing others not to deal with them." (Doc. 18 at 24 (internal quotation marks and citation omitted)). But the Complaint identifies allegedly false statements on Defendants' website, and it also describes how those statements allegedly induced the Affected Owners and others not to deal with Plaintiffs. Count VI survives the motion to dismiss.

### 3. *Plaintiffs' Prayer for Declaratory Relief*

In addition to the six claims discussed above, in their Complaint Plaintiffs also bring a "Prayer for Declaratory Relief" under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 & 2202, requesting two declarations from this Court.[5] Defendants seek dismissal

---

[5] First, Plaintiffs assert that "Plaintiffs and Defendants are . . . involved in [a] dispute over the date on which the 10-day rescission period under [Florida Statute] § 721.01(1)(a)–(b) began to run," (Compl. ¶ 105), and Plaintiffs request a declaration that:
> (1) by signing the Receipt for Timeshare Documents, Affected Owners 1, 2, and 3 admitted receiving all the documentation Defendants claim that they did not receive in correspondence to Club Exploria; (2) the standard Club Exploria Alternate Media Disclosure Statement meets the requirements [of] Rule 61B-17.011 of the Florida Administrative Code; (3) by signing the Alternative Media Disclosure Statement, Affected Owners 1, 2, and 3 agreed to receive and acknowledge receipt of the documentation that they claim, through Defendants, they did not receive; and (4) the time period during which Affected Owners 1, 2, and 3 could cancel their timeshare interest purchase pursuant to § 721.10(1)(a)-(b) began to run on the dates on which Affected Owner[s] 1, 2, and 3 signed the Club Exploria Receipt for Timeshare Documents, or otherwise, the date on which they actually received these documents.

16

of this prayer for declaratory relief on the basis that "Plaintiffs are attempting to have this Court make determinations that directly affect the contractual rights of" the Affected Owners—Defendants' clients rather than Defendants themselves. (Doc. 18 at 24). Defendants argue that "any request for declaratory relief should be made in a separate action directly against those clients, who are the real parties in interest." (Id.). Plaintiffs respond by asserting that "[a] determination in Plaintiffs' favor would deprive Defendants of a source of income making Defendants real parties in interest." (Doc. 23 at 22). The Court agrees with Defendants.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The "actual controversy" requirement means that "there must be a substantial continuing controversy between parties having adverse legal interests." Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985). "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred," id., and "the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury," id.

---

(Id.). Second, Plaintiffs assert that they and Defendants "are involved in a dispute over whether . . . statements allegedly made by Club Exploria and Summer Bay Partnership in connection with Affected Owners 3, 4, and 6's purchase of their timeshare interests are grounds for cancelling their purchases in light of" provisions in agreements signed by Affected Owners 3, 4, and 6. (Id. ¶ 109). Plaintiffs seek a declaration "that Affected Owners 3, 4, and 6 disclaimed reliance and/or acknowledged that they were not relying on any of the . . . alleged statements when deciding to purchase their timeshare interests." (Id. ¶ 110).

The declarations that Plaintiffs seek involve a possible dispute between Plaintiffs and the Affected Owners rather than the dispute at issue in this case between Plaintiffs and Defendants. Defendants are correct that the Affected Owners—not Defendants—are the real parties in interest with regard to the requested declaratory relief. And that dispute has not been established to be anything but hypothetical. Accordingly, Plaintiff's prayer for declaratory relief will be dismissed without prejudice.

## IV. Conclusion

Accordingly, it is **ORDERED** as follows:

1. Defendants' Motion to Dismiss Complaint With Prejudice (Doc. 18) is **GRANTED in part and DENIED in part**. The motion is **GRANTED without prejudice** as to Count II and with regard to the prayer for declaratory relief. The motion is **GRANTED with prejudice** as to Count V. Count II and the prayer for declaratory relief are **dismissed without prejudice**. Count V is **dismissed with prejudice**. In all other respects, the motion is **DENIED**.

2. If Plaintiffs wish to replead Count II, they may file an amended complaint **on or before April 5, 2019**.

**DONE** and **ORDERED** in Orlando, Florida, on March 21st, 2019.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record