# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CLUB EXPLORIA, LLC and CLUB
EXPLORIA MANAGEMENT, LLC,

    Plaintiffs,

v.                                    Case No: 6:18-cv-576-Orl-28DCI

AARONSON, AUSTIN, P.A. and
AUSTIN N. AARONSON,

    Defendants.

## ORDER

Plaintiffs Club Exploria, LLC (Club Exploria) and Club Exploria Management, LLC (CEM) filed this action against law firm Aaronson, Austin, P.A. (Aaronson P.A.) and attorney Austin N. Aaronson (Aaronson), alleging claims under the Lanham Act, the federal civil RICO statute, and Florida law. (Compl., Doc. 1). The Court previously granted in part and denied in part Defendants' motion to dismiss (Doc. 18) and allowed Plaintiffs to file an amended complaint. (Order, Doc. 33).

Plaintiffs have since filed an Amended Complaint (Doc. 39), and Defendants once again move to dismiss, (Mot., Doc. 41). The Court having considered the motion, Plaintiffs' Response (Doc. 46), and pertinent law, Defendants' motion is granted in part and denied in part.

I.     **Factual[1] and Procedural Background**

The facts were recounted in detail in this Court's prior Order (Doc. 33) and are more

---

[1] The facts in the Background section are from Plaintiffs' Amended Complaint (Doc. 39).

briefly stated here. Club Exploria is a timeshare resort developer, and owners of Club Exploria timeshare interests contractually agree to make payments to CEM for fees and dues. (Am. Compl. ¶¶ 16–17). Aaronson P.A. is allegedly an "exit company" that "profit[s] by convincing consumers that they have a purportedly 'lawful' way to 'escape' their [timeshare ownership] obligations, without regard to whether there is any factual or other basis" for avoiding those obligations. (Id. ¶ 8). Defendants allegedly provide "timeshare-relief 'services'" to owners of Club Exploria timeshare interests, (id. ¶ 25), and "encourage timeshare owners to pursue rescission without investigating the facts of their clients' situations," (id. ¶ 9).

Defendants allegedly "us[e] aggressive and dramatic marketing tactics" on their website that "suggest that all timeshare owners have an automatic or inherent right to cancel their contractual obligations to pay—if only the consumer knows the right levers to pull." (Id. ¶ 10 (emphasis removed); see also id. ¶ 53). As a result of Defendants' marketing and advertising, several "affected owners" have stopped making payments to Club Exploria and CEM. (Id. ¶ 12). And some affected owners "hired Defendants to send correspondence to Club Exploria [or its predecessor] alluding to fraud as grounds for rescinding their timeshare purchases." (Id.).

Plaintiffs filed this suit on April 13, 2018, (Doc. 1), alleging six counts: (1) tortious interference with existing contractual relationships; (2) civil RICO violations; (3) violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA); (4) false advertising under the Lanham Act; (5) misleading advertising in violation of section 817.41, Florida Statutes; and (6) trade libel. Defendants moved to dismiss all counts, and in a prior Order (Doc. 33) the Court granted that motion in part and denied it in part. Specifically, the Court dismissed

2

Count V (state law false advertising) with prejudice; dismissed Count II (RICO) and Plaintiffs' prayer for declaratory relief without prejudice; and otherwise denied Defendants' motion. The Court allowed Plaintiffs to replead the RICO claim in Count II.

Plaintiffs then filed an Amended Complaint, restating all of their claims except the dismissed state law claim for misleading advertising.[2] Defendants now move to dismiss the repleaded RICO count and two of Plaintiffs' state law claims.

## II. Legal Standards

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). And in considering a motion to dismiss brought under Rule 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. Discussion

### A. RICO (Count II)

Plaintiffs assert a claim under the federal civil RICO statute in Count II. Among the elements of a RICO claim is "a pattern of racketeering activity." 18 U.S.C. § 1962; see also

---

[2] In light of the dismissal of the original Count V (the state law misleading advertising claim), in the Amended Complaint the trade libel claim is Count V rather than Count VI.

3

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). "Racketeering activity" is defined in RICO as including, but not limited to, any of numerous specified violations of criminal law. See 18 U.S.C. § 1961(1)(B) (listing violations of Title 18 of the United States Code that constitute "racketeering activity"). And a "'pattern of racketeering activity' requires at least two acts of racketeering activity," 18 U.S.C. § 1961(5), though two acts may not always suffice to constitute a pattern, Sedima, 473 U.S. at 496 n.14.

In their initial Complaint, Plaintiffs alleged mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) as the predicate acts for their RICO claim. But in ruling on Defendants' initial motion to dismiss, this Court ruled that Plaintiffs' mail fraud allegations, which were based on the repeated sending of prelitigation letters, fell short, leaving Plaintiffs with only one predicate act—wire fraud via website advertising. (Doc. 33 at 9). In their Amended Complaint, Plaintiffs again rely on the website advertising as one predicate act, and they attempt to plead "a second predicate act," (Doc. 46 at 5), by alleging that Defendants "engag[ed] in monetary transactions in property derived from specified unlawful activity" (18 U.S.C. § 1957)—another of the predicate offenses listed in 18 U.S.C. § 1961(1)(B). (Am. Compl. ¶ 73).

Plaintiffs' predicate act allegations again are insufficient. The Amended Complaint does not adequately plead a violation of § 1957, which requires, among other things, "engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000." 18 U.S.C. § 1957(a). The Amended Complaint does not allege a transaction of greater than $10,000 or any facts plausibly supporting any such transaction. Instead, it alleges merely that Defendants "engaged in one or more transactions involving . . . criminally derived proceeds that, upon information and belief,

4

exceeded $10,000 in isolation or in the aggregate." (Am. Compl. ¶ 80). But these allegations of "in isolation or in the aggregate"[3] are not sufficient. The statute plainly requires *a transaction* in excess of $10,000—not an aggregation of transactions that exceeds $10,000. A transaction less than $10,000 does not qualify. See United States v. Wright, 651 F.3d 764, 772 (7th Cir. 2011) ("Because the financial transaction involved less than the $10,000 minimum the statute requires, [the defendant]'s conviction for violating § 1957 must be set aside."); see also United States v. Rivera-Izquierdo, 850 F.3d 38, 48 (1st Cir. 2017) (discussing Wright and noting "the statutorily imposed $10,000-per-transaction threshold for 'criminally derived property'" in § 1957); United States v. Bazazpour, 690 F.3d 796, 801 (6th Cir. 2012).[4]

In sum, Plaintiffs' § 1957 allegations are insufficient to allege a "second predicate act," and Plaintiffs have not pleaded "a pattern of racketeering activity." Accordingly, their RICO claim fails to state a claim for which relief can be granted, and Count II will be dismissed with prejudice.[5]

---

[3] In their response, Plaintiffs characterize paragraph 80 of the Amended Complaint as alleging "upon information and belief that Aaronson has engaged in at least one transaction exceeding $10,000." (Doc. 49 at 7). But that is not what paragraph 80 says, and no supporting facts for such an allegation are alleged or asserted in any event.

[4] In a footnote in their response memorandum, Plaintiffs assert that in United States v. Atkins, 881 F.3d 621 (8th Cir. 2018), the Eighth Circuit "suggest[ed] that separate actions involving, in the aggregate, more [than] $10,000 in criminally derived funds satisfies the $10,000 threshold . . . when the criminally derived funds were used to purchase a single item." (Doc. 46 at 6 n.2). But in Atkins the court noted that "[t]he violative transaction was Atkins' purchase of a $13,000 tractor" with the funds that were deposited piecemeal. 861 F.3d at 626. Other Eighth Circuit cases note the "*a transaction*" element of § 1957. See, e.g., United States v. Johnson, 450 F.3d 366, 375 (8th Cir. 2006); United States v. Pizano, 421 F.3d 707, 722 (8th Cir. 2005).

[5] In their motion, Defendants argue additional reasons for dismissal of the RICO count. First, they argue that Plaintiffs do not allege a RICO "enterprise" distinct from Aaronson P.A. They are correct on this point. The Court noted in its prior Order—in rejecting arguments about an insufficient "association in fact" enterprise—that Plaintiffs had

### B. Tortious Interference (Count I) and FDUTPA (Count III)

Defendants also argue in this second motion to dismiss that Plaintiffs' state law claims for tortious interference and violation of FDUTPA are barred by Florida's "single action rule," which "prohibits defamation claims from being re-cast as additional, separate torts . . . if all of the claims arise from the same defamatory publication," Kinsman v. Winston, Case No. 6:15-cv-696-Orl-22GJK, 2015 WL 12839267, at *5 (M.D. Fla. Sept. 15, 2015). Defendants assert that Counts I (tortious interference) and III (FDUTPA) are barred under this rule because they are based on the defamatory statements that are the subject of Plaintiffs' trade libel claim in Count V. Plaintiffs respond that Defendants may not raise this argument in their second Rule 12(b)(6) motion because they did not raise it in their initial motion and that the argument fails on its merits in any event. Plaintiffs are correct on both scores.

First, although Defendants raised numerous arguments in their first 12(b)(6) motion, the single action rule as a bar to Counts I and III was not one of them—though it was available at that time. Thus, it is not proper for Defendants to now raise this argument in their second 12(b)(6) motion. See Fed. R. Civ. P. 12(g)(2) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."); Leyse v. Bank of Am.

---

sufficiently alleged a legal-entity enterprise—Aaronson P.A. (Doc. 33 at 8). But Plaintiffs have not established a basis for Aaronson P.A. itself to be liable as a RICO "person," as the only "enterprise" that Plaintiffs allege is Aaronson P.A. itself. See generally United States v. Goldin Indus., Inc., 219 F.3d 1268 (11th Cir. 2000) (en banc) (holding that the RICO "person" must be distinct from the RICO enterprise). Thus, even aside from the ruling in the text of this Order based on a lack of predicate acts, the RICO count would be due to be dismissed as against Aaronson P.A. (but not Aaronson) on this basis as well.

Defendants also argue that Plaintiffs have not sufficiently alleged a relationship between predicate acts. The Court has found that Plaintiffs have not sufficiently alleged two predicate acts, and thus the issue of relatedness does not come into play here.

6

Nat'l Ass'n, 804 F.3d 316, 320–21 (3d Cir. 2015) (finding it improper for district court to consider successive 12(b)(6) motion, noting that "[t]he procedural bar of Rule 12(g)(2) . . . covers all motions to dismiss for failure to state a claim, regardless of the grounds asserted"); see also In re Apple iPhone Antitrust Litig., 846 F.3d 313, 317–20 (9th Cir. 2017) (noting that "Rule 12(g)(2) provides that a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6), but the defense may be asserted in other ways," and collecting cases on the issue).

Second, even if it were proper for the Court to entertain this argument in the face of Defendants' failure to raise it in their first motion, the court cannot conclude that the single action rule bars Count I or Count III. As an initial matter, there is some debate among courts about whether the rule applies only where the defamation claim in the case is barred—by, for example, the statute of limitations or an immunity defense—or applies also in cases where that claim remains viable. Compare, e.g., Kinsman, 2015 WL 12839267, at *5–6, with Fin. Info. Techs., Inc. v. Lopez, Case No. 8:15-cv-2784-T-30AEP, 2016 WL 688052, at *3 (M.D. Fla. Feb. 19, 2016). This Court need not weigh in on this debate, however, because the rule only applies where the secondary counts are based solely on the facts underpinning the defamation count. See, e.g., Fridovich v. Fridovich, 598 So. 2d 65, 69 (Fla. 1992) ("Obviously, if the *sole* basis of a complaint for emotional distress is a privileged defamatory statement, then no separate cause of action exists." (emphasis added)); Callaway Land & Cattle Co. v. Banyon Lakes C. Corp., 831 So. 2d 204, 208 (Fla. 4th DCA 2002) (finding claims barred where they were "based on the same facts and circumstances as the . . . disparagement claim"). Here, Plaintiffs aptly note that their

tortious interference and FDUTPA claims are not based solely on the website statements that ground their trade libel claim. Instead, those counts include allegations regarding letters Defendants sent to the owners and advice that Defendants gave to the owners—not defamatory statements published about Plaintiffs. Thus, even assuming that the single action rule could apply here—where the trade libel claim is still viable—it does not bar these other claims at this stage of the case. Defendants' motion is denied insofar as it is directed at Counts I and III.

## IV. Conclusion

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss the Amended Complaint (Doc. 41) is **GRANTED in part and DENIED in part.** The motion is **granted** as to Plaintiffs' RICO claim (Count II), which is hereby **dismissed with prejudice**. The motion is otherwise **denied**.

**DONE** and **ORDERED** in Orlando, Florida, on October 21, 2019.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

8