UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CLUB EXPLORIA, LLC and
CLUB EXPLORIA
MANAGEMENT, LLC,

      Plaintiffs,

v.                                                                    Case No. 6:18-cv-576-JA-DCI

AARONSON, AUSTIN, P.A. and
AUSTIN N. AARONSON,

      Defendants.

---

## ORDER

Club Exploria, LLC and Club Exploria Management, LLC (collectively Exploria) filed this action in 2018 alleging, among other claims, that attorney Austin N. Aaronson and his law firm, Aaronson, Austin, P.A. (collectively Aaronson) tortiously interfered with contracts between Exploria and purchasers of timeshare interests at Exploria's resorts. After the parties filed cross-motions for summary judgment, the Court granted Aaronson's motion, denied Exploria's motion, and entered judgment in favor of Aaronson on all remaining claims in this case. (Order, Doc. 168; Judgment, Doc. 169).[1] Exploria has now filed a

---

[1] In addition to the tortious interference claim, the other claims remaining from the Amended Complaint (Doc. 39) were: violation of the Florida Deceptive and Unfair Trade Practices Act (Count III); violation of the Lanham Act (Count IV); and trade libel (Count V). A fourth claim—for violation of the Racketeer Influenced and Corrupt

"Motion for New Trial" (Doc. 173) requesting reconsideration of the Court's ruling on Exploria's tortious interference claim. Because Exploria fails to establish clear error or manifest injustice, the motion must be denied.

## I. Legal Standards

Courts recognize "three grounds justifying reconsideration of an order: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." McGuire v. Ryland Grp., Inc., 497 F. Supp. 2d 1356, 1358 (M.D. Fla. 2007) (quoting True v. Comm'r of the I.R.S., 108 F. Supp. 2d 1361, 1365 (M.D. Fla. 2000)). "Reconsideration of a previous order is an extraordinary measure and should be applied sparingly in the interests of finality and conservation of scarce judicial resources." Scelta v. Delicatessen Support Servs., Inc., 89 F. Supp. 2d 1311, 1320 (M.D. Fla. 2000).

## II. Discussion

Exploria does not argue that there has been an intervening change in controlling law or that new evidence has been discovered since entry of the challenged order and judgment. But Exploria contends that the Court must reconsider its Order to correct clear error or manifest injustice because: 1) the Court erred in limiting Exploria's tortious interference claim to the six "Affected Owners" described in the Amended Complaint; 2) if the Court rejects the first

---

Organizations Act (RICO) (Count II)—was dismissed with prejudice more than a year before the summary judgment rulings. (See Order, Doc. 87).

argument, Exploria should be granted leave to amend; 3) the Court excluded relevant evidence; and 4) the Court "erred when it gave weight to" certain record evidence. All of these arguments, which are addressed in turn, fail.

### A. "Additional Affected Owners"

Exploria first argues that the Court erred in not considering the contracts of "Additional Affected Owners" when ruling on the tortious interference claim. But in its Amended Complaint, Exploria identified the contracts that were at issue and never sought to amend its claim to add other contracts as a basis for that claim. Exploria's motion for reconsideration on this ground thus fails.

In the Complaint and Amended Complaint, Exploria described six Exploria timeshare owners as "Affected Owners" whose contracts Aaronson allegedly interfered with—referring to them not by name but numerically as "Affected Owners 1, 2, 3, 4, 5, and 6" and defining those six as "(collectively, 'Affected Owners')." (See, e.g., Compl., Doc. 1, ¶ 7; Am. Compl., Doc. 39, ¶ 7). And in the tortious interference count (Count I of both Complaints), Exploria specifically alleged that Aaronson interfered with Exploria's contracts with Affected Owners 1, 2, 3, and 5 and sought damages to compensate for lost payments and fees owed by Affected Owners 1, 2, 3, and 5. (See Compl. ¶¶ 66–68; Am. Compl. ¶¶ 66–68). That count also mentioned Affected Owner 6 and the previously defined "Affected Owners" collectively. (See, e.g., Am. Compl. ¶¶ 64–69).

3

Because Exploria had not identified Affected Owners 1 through 6 by name in either of its Complaints, during discovery Aaronson propounded interrogatories asking Exploria to "state the identity and contact information for the 'Affected Owners 1, 2, 3, 4, 5, and 6' as described in paragraph number 7 of the Complaint." (Exploria's Objs. & Resps. to Aaronson's First Set of Interrogs., Doc. 126-36, at 5). Exploria complied, providing the requested identifying information for Affected Owners 1 through 6, number by number. (See id. at 6–9). Then, in its summary judgment motion, Exploria listed a completely different set of owners as the "Affected Owners." (See Doc. 129 at 8 n.3 (listing eleven sets of owners while citing pages 6 through 8 of the Amended Complaint, where Affected Owners 1 through 6 are described)). This prompted the Court to note in the summary judgment order that Exploria's motion "lists different owners as the Affected Owners" than those identified by Exploria in its interrogatory responses. (Doc. 168 at 6). The Court then stated that it would "disregard[] the new list because Exploria has not requested leave to amend its complaint or interrogatory answers." (Id.).

Exploria argues that the Court erred in confining its assessment of the tortious interference count to the contracts of the numbered Affected Owners described in the Amended Complaint because the Amended Complaint "already established that [Exploria was] seeking damages relating to" contracts of "Additional Affected Owners." (Doc. 173 at 4). But this is not so.

4

Exploria did add references to "Additional Affected Owners" in the Amended Complaint, but it did so only in its amended RICO claim (Count II), (see Doc. 39 at 24–28),[2] and in the general prayer for relief at the end of the Amended Complaint, (id. at 32). "Additional Affected Owners" are not mentioned in the tortious interference count, and Exploria's contention that it sought "damages relating to" contracts of "Additional Affected Owners" in its tortious interference claim is not well-taken. The reference to "Additional Affected Owners" in the general prayer for relief at the end of the Amended Complaint does not cure the absence of supporting allegations in the tortious interference count. See Daniels v. Thomas, 225 F.2d 795, 797 (10th Cir. 1955) ("It is well settled that the prayer for relief is no part of the cause of action and that the parties are entitled to such relief and to such judgment as the complaint . . . makes out.").

The elements of a claim for tortious interference with contract are: (1) the existence of a contract; (2) the defendant's knowledge that the contract existed; (3) intentional procurement by the defendant of a breach of the contract; (4) lack of justification or privilege for the breach; and (5) resulting damages to the plaintiff. Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1321 (11th Cir. 1988). Here, the contracts that Exploria described in Count I of

---

[2] The Court ultimately dismissed the RICO count with prejudice on Aaronson's motion. (See Docs. 41 & 87).

both of its Complaints were those of specific, numbered Affected Owners, and those are the only contracts that Exploria placed at issue in Count I. References to "Additional Affected Owners" elsewhere in the Amended Complaint do not expand the intentional interference count beyond the contracts of the numbered Affected Owners mentioned there and defined in Exploria's interrogatory responses.[3]

The Court rejects Exploria's contention that adding the contracts of "Additional Affected Owners" to the tortious interference claim "merely explained, expanded, or amplified" the allegations of Count I of the Amended Complaint. (See Doc. 173 at 6). If Exploria wanted to add additional contracts as a basis for its tortious interference claim, it was required to seek leave to amend. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (stating that summary judgment briefing is not the proper place to raise new claims). Exploria cannot complain that Aaronson or the Court[4] failed to

---

[3] Exploria claims in its motion for reconsideration that it "did name the Additional Affected Owners in their response to Interrogatory Number 12 in Defendants' Second Set of Interrogatories." (Doc. 173 at 2). But this both is misleading and misses the point. In Interrogatory Number 12, Aaronson did not—as it had in its first set of interrogatories—mention the term "Affected Owners" at all; instead, it asked Exploria to identify "all of the current and former Club Exploria timeshare owners from whom [Exploria] has received notice of representation authored by the Defendants." (Doc. 173-1 at 4). Exploria responded by listing eighteen owners, (see id. at 4–8), but nowhere did Exploria redefine—or attempt to redefine—any of "Affected Owners 1 through 6" by substituting any of these eighteen owners in their place.

[4] Exploria contends that in the summary judgment order the Court "sua sponte" limited Count I to the "Affected Owners" described in the Amended Complaint. (See

construe the amended complaint to include what it never sought leave to add. See Flintlock Constr. Servs., LLC v. Well–Come Holdings, LLC, 710 F.3d 1221, 1226–28 (11th Cir. 2013) (holding that where intervenor-plaintiff did not plead estoppel theories in its complaint, it could not amend its complaint by arguing estoppel in its summary judgment motion and the district could "should have disposed of [that] claim with a statement that" the intervenor-plaintiff failed to establish the claim "as alleged in . . . its complaint"). Exploria has not established clear error or manifest injustice in the Court's consideration of the tortious interference claim as described by Exploria itself in Count I of its Amended Complaint.

## B. Leave to Amend

Exploria alternatively argues that the Court should now grant it leave to amend to add allegations that Aaronson interfered with the contracts of "Additional Affected Owners" beyond the Affected Owners specifically described in the tortious interference claim. Although Federal Rule of Civil Procedure

---

Doc. 173 at 9 (asserting that the Court made a "*sua sponte* ruling . . . without any briefing on this issue from any of the Parties")). Not so. In its summary judgment filings, Aaronson clearly objected to Exploria's attempt—whether through argument or its damages report—to expand the tortious interference claim beyond what had been pleaded. (See Doc. 126 at 20–21 & nn.13 & 14; Doc. 163 at 3–4 ("Exploria argues that they should be permitted to *sua sponte* supplement their Amended Complaint to allege contracts that Defendants have allegedly interfered with beyond what was pled. . . . Aaronson takes issue with the fact that the complaint only places four (4) specific contracts at issue and Exploria now seeks to add some unknown number of additional contracts." (internal record citation omitted))).

15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires," a party seeking to amend after the deadline set in the Court's scheduling order must show good cause for allowing the late amendment, Fed. R. Civ. P. 16(b)(4); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1312 (11th Cir. 2009). And courts may decline leave to amend "when the amendment would prejudice the defendant, follows undue delays, or is futile." Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999).

Exploria has not established good cause. Its request for leave to amend is untimely, and amendment at this late date would prejudice Aaronson. The deadline to amend set in the Court's Scheduling Order has long passed; discovery has long been closed; cross-motions for summary judgment have been filed and ruled upon; and judgment has been entered. "Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided." Id. Accordingly, leave to amend to expand the scope of Exploria's tortious interference claim will not be granted.

### C. Evidence Relating to Additional Affected Owners

Exploria next argues that the Court should have considered evidence relating to Additional Affected Owners as indirect evidence of Aaronson's tortious interference with the contracts of the numbered Affected Owners. But Exploria has not established clear error or manifest injustice.

8

In its motion, for the most part Exploria makes only vague assertions about evidence of "routine business practice" that the Court allegedly should have considered—without specifying the evidence to which it is referring. And the one specific piece of evidence that Exploria identifies in the body of its motion for reconsideration[5]—deposition testimony given in another lawsuit by Kenneth Feldman, who owned a timeshare at a non-Exploria resort—was expressly considered by the Court in the summary judgment order. (See Doc. 168 at 10). The Court determined that his testimony was not helpful to Exploria's case. (Id.) Exploria has not established that the Court erred in failing to consider relevant evidence.

### D.  Unsigned Retainer Agreements

Finally, Exploria finds fault with the Court's mention in the summary judgment order of unsigned retainer agreements. But reference to those agreements does not warrant reconsideration of the summary judgment order.

The Court did cite unsigned retainer agreements that were different from those signed by the Affected Owners. (See Doc. 168 at 11). But Exploria itself submitted those agreements and relied on them in its motion for summary judgment. (See Doc. 129 & Ex. WW thereto (filed at Doc. 132-29)). And although

---

[5] In a footnote to the "Conclusion" section of its motion, Exploria also cites evidence of "temporal proximity" of owners' breaches to their hiring of Aaronson. (See Doc. 173 at 13 n.50). But this evidence does not create a genuine issue of material fact regarding whether Aaronson intentionally interfered with the contract of any of the Affected Owners described in Count I of the Amended Complaint.

Exploria asserts that the Court "erred when it gave weight to" these agreements, (see Doc. 173 at 3), courts do not "weigh" evidence at the summary judgment stage but instead "determine whether there is a genuine issue for trial," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). These agreements—like the rest of the record evidence—failed to create a genuine issue of fact on the intentional interference claim, and the Court's mention of them as part of the evidence that fell short of creating such an issue was not error.

### III. Conclusion

Accordingly, it is **ORDERED** and **ADJUDGED** that Plaintiffs' "Motion for a New Trial" (Doc. 173), which is construed as a motion for reconsideration, is **DENIED** in all respects.

**DONE** and **ORDERED** in Orlando, Florida, on April 15, 2021.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record